This is 4090242, In Re the Marriage of Joseph Eagleton and Lorraine L. Eagleton. We have for the appellant, Howard Feldman, and for the appellee, James Brinketter. Mr. Feldman. Good morning, may it please the court, counsel. This is an appeal of a dissolution of marriage and apportionment of property and award of maintenance and a characterization of property. The parties were married for approximately 25 years and there are no children involved. The issue really relates to the application of the 503 standards and eventually the 504 standards. And in thinking about this case and trying to determine what is the best way to convey the trial court, what we believe is the trial court theory, in equitably apportioning the property This almost came to me as a forest or the trees, because even in our brief, we approach it by property 503, maintenance 504, characterization of the property. But this really needs to be looked at in the totality of the property issues. Because these two individuals throughout their married life would be best to describe working individuals making modest incomes. Mrs. Eagleton's parents had been able to acquire certain assets and income. And a majority of the marital assets or a majority of the assets that were divided here were really assets that were gifted or came to Mrs. Eagleton which were subsequently, this is a point of an argument, but for purposes of here I'll defer to the court's determination, declared to be marital in character. And so we really go to the 503A1 characterization of what is an equitable division. And as this court knows, I've done one or two dissolutions over the last 30 years that I've been practicing and everybody espouses the fact that we are not a community property state. However, when you get to the trial court, the starting point almost is always an equal division. And there's lots of reasons why that would be true. You have a stay-at-home spouse. Things are getting a little bit more complicated in today's day and age as you have two spouses oftentimes where a traditional role may be a lesser income spouse now is a higher income spouse. But the bottom line is we start with an equal division. In this case, there is really very few what would be considered traditional marital assets. In other words, assets that were acquired by the two individuals now without any outside help and are theirs through their own endeavors and efforts. Starting with the house, there was a dispute with the house about whether a deed was signed to jointly title it or not. But for purposes, that house was Mrs. Eagleton's prior to the marriage. And it comes down to, again, I've not only tried a few, I've been in this court a few times. And I understand that the standard is a difficult standard. That it is great deference given to the trial court's determination in these matters. And it tends to be an abuse of discretion or manifest weight in terms of the allocation. It's going to be abuse of discretion of no reasonable individual. And I would suggest that whether you call it a 50-50, 45-55, if you talk, I'm not sure who the reasonable person is, but if you talk about a reasonable person, I don't think anyone would think that a division of assets where an equal division went to the spouse that was not the recipient of the gift, that that was an equal division. And I am not suggesting that there should be no assets given to that spouse. But if you look in the case cited, and you're not going to hear me in this court, is aware of those general principles. It's the application of the law to those general, it's the application of the facts to those general principles that become important. The contribution, Mr. Eagleton was a custodian, then he drove a truck in a concrete business, oftentimes unemployed during the, what I would refer to as off-season. He became disabled later in life, was on disability, and a pension that he had earned as a teamster. Mrs. Eagleton worked in a, I say clerical, it's a higher category than merely clerical fashion, in the financial industry, put her back, became disabled, is receiving disability, and receives monies from a trust that was set up by her parents after her parents died. Well, although her parents, and it's set out in the brief, gave her the house and there was a payback provision, and the court can read those payback provisions with regard to their, it's clear that that was a gift to her, and then the question of whether the deed was in fact executed by her, the court found that it was. So the house, for purposes of argument here, is a marital piece of property that needs to get division. What Mrs. Eagleton ended up with at the end of this was a house and $60,000 of debt to equalize the assets. Now, she has a stream of income coming from a trust that she uses, and I believe that the court considered to be income that someone could pay maintenance from, and then was ordered to pay maintenance, in effect, from her non-marital trust income to Mr. Eagleton. Mr. Feldman, can I ask you a question about that? Sure. How long is it expected that she would have that stream of income? You know, I have not seen, to the best that I know, and I did not try the case, and that's always a handicap. That's always a handicap for an appellate lawyer. But the, I've not seen the trust document, and I do not believe that the trust itself, either if it was a testamentary trust, that the trust itself is in the record. Now, Mr. Greenpool, you may be able to answer that question, but I believe it is a lifetime stream of income, but I believe it is dependent upon the farm industry for the agricultural commodity prices. I think the three years of representative income, but I do not believe she has a fee interest or obtains a fee interest in the property. So I really look at that stream of income to be almost in the nature of her inherited property, that she is now being asked to do that. Part of the problem that I have in the record here is that, and Mr. Greenpool there has told me that he believes that the affidavits were provided to the trial court. I have no reason since I wasn't there to do it, but they're not part of the record. So I have nothing, nor does this court, have anything to do to be able to ascertain whether that maintenance amount is necessary or not necessary in terms of Mr. Eagleton's daily living expenses or the daily living expenses of Mr. Eagleton. But that's where I'd say looking at the forest versus the trees. If we were talking about just the division of assets, it's one thing, but basically what we have here is we have this property division being supported totally by assets that were inherited in some fashion or gifted to during the lifetime to Mrs. Eagleton. Mr. Fulman, you said that the court also credited her with the $119,000 that she paid over to Mark Butcher, who was a cousin apparently. We believe that that was, again, those are funds that she didn't earn. Mr. Eagleton did not earn. Those were inherited funds or funds that were there that for a short period of time, from I believe the marriage fell apart in 2005 or 2006, that to the extent that his name were on these funds at all in any account, of course that's somewhat disputed whether she put them on or not, is a 2003. It was a totally passive account. They were not used for any other purposes that I know of. They were not used to support the family. His name was put on it. But assuming you're correct, Your Honor, assuming that that is a correct analysis, that those are in fact transmuted into marital funds, the question is, was that transmuted and was that gift? Because that's what we're talking about. When I receive something, I put a spouse's name on it, I'm gifting my, because it's all mine, if I inherited it or it was gifted to me, I don't have any obligation to do that. Was the intent to give somebody 50% of that? Was the intent to give somebody 40% of that or some other amount? What is an equitable amount to deal with? And I would we have this mindset that it has to be 50%. And I do not believe that it is 50%. Mr. Feldman, before we get too far from the affidavits, was there any attempt to find the affidavits? There was. Mr. Brinkholder did submit a motion to submit his. But it is not mentioned in the record, nor is it an exhibit, and we objected to introducing it because, again, I don't mean to impugn anybody at all. I have no reason to do that other than it's not part of the record. And my experience is that we're bound, there are lots of things, if I had the ability to try the case, that I may want to do, but we're stuck with what the record is and what the record was certified by the clerk. And it is. No one contacted the clerk. If you can ask Mr. Brinkholder, I think that there were attempts to try to clarify where they went. I mean, I think that there clearly were to do that. And it is, to the best we know, it is, I can't say it's not a clerk's error, but to the extent the clerk didn't admit, to the best of my knowledge, that, gee, we left those things out. Because quite honestly, if somebody, the problem, of course, is it's not referenced in the exhibit, in the transcript. You know, they're not in the exhibit. And I would love to say that I've never done that, but that would be absolutely not accurate, where at the end of the case, parties get up and hand the exhibits and note, hand the affidavits and notes, say it's exhibit such and such. Certainly, after doing a few of these cases, I'm much more careful about that. Counsel, are you arguing that when she put her husband's name on the account or the accounts, and on the deed, that she intended to convey something less than 50 percent? I'm conveying, yes, I am. Did she testify to that? She testified it wasn't her intent to give it, at least with regard to the financial ones. She contested the signature on the deed. Now, we could argue that in the brief. How do you justify the argument you're making today, then, that she intended to give something less than 50 percent? No, I'm not saying specifically for her, Your Honor. I'm saying that we take it, where do we come up with the intent of 50 percent? Because it's common ownership? Because it's right of survivorship? There is nothing within, when we go to divide up marital property, there's nothing in the statute, there's nothing in 503 that says it's an equal division. It talks about the contributions of each party. And so I am suggesting that that division, when you go to make that division, you look at the contribution, assuming it's a gift to the marital estate, which is what I believe that the trial court was saying. But I don't think that starting at an equal division is an appropriate starting point where it all has become inherited money, or inherited assets, in this case, where somebody has contributed. Is there any case law to support that proposition? No. But there's also no case law that supports the opposite proposition. And when you read the case law, it's the reason I'm not up here citing case law. If I cited a case that had a 25-75 percent division that would be helpful to me, Mr. Greencoder would find a case that said that the 75-25 in favor of the other spouse. These are so factually dependent. And in fact, to be honest with you, I have not seen a case that is so heavily gifted where there was, where they didn't use the money like a piggy bank. In other words, here's this inherited money, we're just using it for everything that we live on, you know, I've stopped working, whatever the case may be. These people lived a very simple lifestyle. I mean, they had a nice home that was built early on for the marriage of Mrs. Eagleton. But, you know, other than that, there is no evidence here of a particularly grand lifestyle that would even come close to the kind of assets that seem to be here, the kind of cash assets. And those came very much later in the marriage, to be honest with you, because it wasn't until Mrs. Eagleton's mother moved on. The Nidiantic Bank CD, and we've discussed it in our brief, clearly there was not an intent to gift that to him. And those are the monies that I believe were discussed with regard to Mr. Boettcher. And what's interesting, they were credited, but they weren't credited as dissipation. You know, if you take money and it's a non-marital purpose, and you give it away, I guess it would be, would the result be any different from the bottom dollars? No. It's just, in terms of the analysis, and I know when I'm swimming upstream. And what I'm going to say now is swimming upstream. The general proposition from this court is, if a trial court says that it's considered the factors set forth in the Marriage and Dissolution of Marriage Act, 503 and 504, that that's sufficient. They don't need to go a whole lot deeper in its analysis when it makes its decision. And I don't mean to burden the trial courts with having to write lengthy opinions. But when you have these types of cases, there are some types of cases that really do require a greater analysis for this court to be able to review, and for an understanding of what the judge was really thinking. You know, we have, and we've gone through each of the factors. There's dissipation. It really, there wasn't any. There was value of property assigned, duration of marriage, long-term marriage. Years ago, a trial judge, Keith, once asked me in a 14-year marriage whether it was a long-term marriage. My response was, to Judge Keith, was whether it was a trick question. Because I had no clue, and I've never had a definition of what a long-term marriage was. So this clearly, in my opinion, is a long-term marriage. Economic circumstances of each spouse. I met both parties receiving substantially the similar stream of income other than the inherited income that my client receives. Prior marriage obligations aren't there. Economic circumstances of each spouse. You know, my guess is the economic circumstances is consistent with their earning powers. No anti-nuptial agreement. Aged, they're both about the same age. They both are in particularly good health. Both of them are retired on disability. Apportionment in lieu of maintenance. That wasn't an issue. Future income. Future income, if you derive it from their own services, approximately the same. Tax consequences really are not an issue. So the real issue here is the contribution of each party. What did each party do? Both of them work. Both of them, and in some respects, both of their incomes are somewhat the same based upon the fact that they're both receiving similar amounts of disability. One has a pension that's derived money, and one has a disability policy. With regard to the maintenance, well, that is really hard without the affidavits to even discuss. It makes it barely near impossible, and I would hope that there wouldn't be just the deferral that the judge had some inkling and knew what he was doing because that really deprives us of the ability to be able to challenge the court's decision. We don't know the needs of the party. We know the income is about the same, but for the monies that are receiving from the inheritance. That's the bottom line is everything goes back to what's being received. And going to the argument, at least in my view, that a reasonable person would not have arrived at this decision, this is something that is outside of the bounds, is that the statement of Mr. Drinkholder in his brief where he said that her parents may be very unhappy, I won't use the exact terms that he used, but would be extremely unhappy if they knew what happened to their inheritance is of no consequence. From a pure legal standpoint, it may not be in terms of the analysis of the actual elements. But when you look at whether or not the equitable division of the property is appropriate, it certainly comes into play that, in fact, no reasonable person would believe that a division that is substantially equal and maintenance to the individual would be an appropriate way for the inheritance to be used. Thank you. Mr. Feldman, are you asking us to reverse and remand on the issue of maintenance? I believe I have to. I mean, I, you know, and I know the standards that the court cannot substitute its judgment for the trial court. And I have, much to my chagrin, been participated in cases where, in fact, this court has rendered a decision and basically not remanded the case and just decided on the point with the property division. I don't know how the court could do that. I don't have anything in front of me, nor do you have anything in front of you, that allows anybody to consider what that maintenance award would be, other than take it on faith. And I don't know the trial judge. You know, and I'm not going to say anything. When I came up here and started, I said the property division is, I think there's a mindset, as there is with maintenance, there's a mindset that you make everything close to 50-50. I mean, I think that's the starting point. And I think where there hasn't been some of the traditional factors that caused that mindset to occur, but that's not a starting point. We are not a community property state. We are an equitable division state, just proportions. Now, I would love for this court to provide some very specific definitions for that, for those of us at the trial level that do this work every day. But I once tried that for maintenance, and it didn't work very well, because I think it's very, very difficult to do that. That's why we have what's here. I believe where somebody, where the majority of the estate to be divided, I'm not going to say whether marital or not, where the majority of the estate to be divided is in fact inherited from one family, providing substantially equal estate, is in fact not equitable. I've used my time. Thank you. Thank you, Mr. Feldman. Mr. Brinkett. Thank you. Will you please, the court, counsel. I hope you won't hold it against me if I'm brief. But I will start by stating that where the court has made a determination of something as a gift, and in this particular case, there was a gift, and the court so found, that the party challenging that there was a gift has to present clear, convincing, and unmistakable evidence to burst the bubble of the presumption of the gift. But that has not been done. Mrs. Eagleton has chosen in this particular case to just ignore or forego the opportunity to explain to the trial court what she intended to do when she made those transfers. She said, yeah, I signed it. I signed it. I did the transfer. I transferred the property into joint property. I transferred the CD into joint property. She denied that she signed the deed. But basically, she has foregone the opportunity to tell the court or give any explanation as to why she might have done that other than to make a gift and take into account also that, please, that these transfers were made after the parties had been married for a long time. These were not transfers that just happened on the spur of the moment. She inherited this money, these CDs, after she and Joe had been married for many, many years. Joe had been working as a ready mix driver or custodian. He'd bring his payroll check home and handing it to her for 20 years. And in the light of that, she goes to the bank and she makes this transfer. It was marital property. It was a gift. And for her to claim now that the marriage has fallen apart, that it wasn't a gift, it's just specious. Well, what about Mr. Feldman's argument that this money from the trust should not be considered? Well, the court can order maintenance to be paid for non-marital assets. And I don't dispute that this marital trust or this non-marital trust is non-marital and is still non-marital. But it's part of Mrs. Eagleton's income and the court can order maintenance to be paid. And this is not an extravagant maintenance reward. It's $6,000 a year that out of $60,000, $70,000 of income, maybe Joe, who makes about $21,000 a year without maintenance, $6,000 would allow him to continue to live at a frugal standard of living. It is simply non-marital in the trust, her share of those trusts that she received approximately $2,000 to $2,300 or thereabouts. But I think the court can always order maintenance to be paid out of non-marital assets or income. And I would also point out that as to the $119,000 that on the day Mrs. Eagleton was served with the summons that she remembered that her mom told her to give Mr. Butcher, why didn't she give it before that? Why didn't she get any contribution from her brothers and sisters or her sisters, she has two sisters, to share in that responsibility? Why is it coming out of all of her assets? It wasn't coming out of her assets, out of their joint assets. It was her attempt to hide marital assets and the court so ruled. And Mr. Feldman did not... The court so what? The court found that it was marital. Right, the court did not find dissipation. Was there evidence about the sisters receiving money in the record? There was evidence about the sisters. Yes, Mrs. Eagleton gets one third of these two farm trusts and she is the person who is responsible for administering the farm trusts. And she's the one that takes care of the income and does the splits and writes the checks for the grain and sends the two sisters their checks. And she gets paid for that. That's part of her income stream. So, but the $119,000 that she took, not out of that money, but out of her own assets and transferred to Mark, the court awarded that to her. And when you say took out of her own assets, wasn't that at the time it was transferred in a joint account? With Mr. Eagleton. Right. Yes. And so, and Mr. Feldman does not even suggest that the court was wrong in doing that. And it's not in his brief and he hasn't argued it, but it seems to keep coming up. Because it is part of her award under the court's order. The court granted my client 45% of the marital estate. We asked the court for more and we were denied that. I honestly cannot stand here and say that in view, especially in view of the fact that a lot of this money was inherited money that the court's decision to give her a little more might not have been in a, probably wasn't an abuse of discretion. But I certainly think that Mrs. Eagleton has forgone any opportunity that she had to tell the court that this was anything other than that these transfers into marital and to joint assets was anything other than a gift to Mr. Eagleton. And this is not a marriage like we see in, I think it's Fleming, where all the property was put into, I'm not sure the name of the case, but cited by Mr. Eagleton, Mrs. Eagleton, where all the money was put into joint assets and the court ruled that the plaintiff, the blind attorney explained to the court that he put it into joint ownership because he was blind and he needed to, and he couldn't take care of it himself. But Mrs. Eagleton just didn't make any kind of explanation at all. She just said, I didn't do that. I don't know how come this, I don't know how come this happened. And when challenged in court, did you, is that your signature? She said, yes. How'd it get there? How? Is that an explanation? Is that clear, convincing, unmistakable evidence required, that's required to show that this was other than a gift? It isn't. And then I just have one comment about the affidavits. I know it's outside the record, but those affidavits were prepared, they were signed, and they were handed to the clerk, and they were lost. I do not know what happened to them. I asked the judge if he had them with his notes, and he looked and he didn't. They're just not in the record. I don't know where they are. I know I got copies of them, but they're not in the record. I tried to get them, just tried to supplement the record, and my motion was denied. So they're not in the record. That's all I have to say. Thank you. Thank you, counsel. Mr. Feldman, Rebecca? I recognize the positions of counsel with regard to the issue of the marital versus non-marital characterization. That's why I've talked about the equitable division. We talk about gifts. We talk about it again. You know, when you give somebody something, tell them what it is, typically. Actually, to have a gift, there needs to be an accident. As I remember, it's been a few years since law school. I remember that if I just give somebody something, they have to accept it in some affirmative way. So maybe it's not the easiest sometimes to call it gifts. I know we had a piece of property with hazardous materials on it. We tried to give it to the state of Illinois on a pretty regular basis, and they sought not to want to take that piece of property until we cleaned it up. There needs to be an affirmative step. What my argument is, and it goes to when you look at the totality of the assets and where they came from, the division even of a 55-45, in my view, is not an equitable or just division of assets. These were inherited. The amount of marital assets in this case is very, very small. Any asset pool that is received by Mr. Eagleton, in effect, is going to be monies that were inherited. So I believe a 55-45 is inappropriate, and I believe that, given the totality of the circumstances, if the court's going to affirm the award of property, then the award of maintenance from that same pool of gifted assets, inherited assets, is, in fact, inequitable and inappropriate. Thank you, Your Honor. Mr. Felden, I have a question. Was the motion to supplement the record objected to? Yes. And was it a motion to supplement the record with both affidavits? As I stand here now, I don't remember, but so I would defer to Mr. Brinko to say yes. They're not referencing the record, nor is their testimony. That's the problem I have. If, in fact, somebody had testified, this is my affidavit, these are my numbers, they are not. I have no way of looking at that. Are there local rules in Macon County, or are there Supreme Court rules that require the filing of these affidavits prior to proceeding on a petition for dissolution? As much of this work as I do, I can't, don't, I'm not saying there isn't. I don't recall if there's a Supreme Court rule on filing of the affidavit, whether there is one in Macon County about local rules. I don't know about it. I didn't file it before. Three days before, and that comes from what, a local rule? I haven't seen the local rule. So I'd have to go back and actually look at it. But in rereading the transcript I'm preparing for today, there's no reference to it. There's no testimony to it. There's no, so it makes it really hard to say, geez, these were presented and considered by the court. Thank you, Your Honor. Thank you, counsel. We'll take this matter under invite.